HARDY, Judge.
This is a suit for damages based upon the alleged tortious repossession and the subsequent sale to a third person of an automobile owned by plaintiff. ( Named as defendants are General Motors Acceptance Corporation and Southern Chevrolet, Inc., domiciled in the City of Alexandria. From a judgment in favor of plaintiff defendants have appealed; plaintiff has answered the appeal, seeking an increase in the amount of the award.
In or about the month of August, 1956, the defendant, Southern Chevrolet, Inc., made extensive repairs to a 1944 Chevrolet Sedan owned by plaintiff, in payment for which plaintiff executed a promissory note, secured by a chattel mortgage, in the principal sum of $291.96, payable in monthly installments of $24.33 each, beginning September 24, 1956. In January, 1957, Southern Chevrolet, Inc., made additional repairs to the same automobile and, in payment, plaintiff executed another promissory note secured by a chattel mortgage in the principal sum of $78.80, payable in monthly installments of $9.85, beginning January 24, 1957. In February, 1957, plaintiff was delinquent in his installment payments, having defaulted in the payment of the January installment on the above described notes. Defendant, General Motors Acceptance Corporation, had become the owner of the notes described by purchase from Southern Chevrolet, and, on or about February 18, 1957, a representative of GMAC called on plaintiff for the purpose of attempting to effect collection of the delinquent payments. Plaintiff was out of work, consequently unable to make payment on the account, and, at the suggestion of the collector, plaintiff drove his automobile to the Southern Chevrolet, Inc., lot and he and the collector, Braxton by name, called at the office of Mr. Adams, Manager of Southern Chevrolet, Inc., to discuss the possibility of arriving at a mutually satisfactory arrangement.
There is a sharp conflict of testimony as to the agreement reached between the parties named. Plaintiff testified that he agreed to store his automobile on the Southern Chevrolet lot until he could secure employment and take up the payments on the notes. Both Braxton and Adams testified that plaintiff agreed to the repossession of his automobile and executed an instrument of voluntary surrender under the terms of which he released his title to the automobile in consideration of the release and discharge of any further liability on the chattel mortgage contracts covering the said vehicle. The instrument in question, signed by plaintiff, which signature he admitted, was introduced in evidence. Also introduced in evidence was a repossession report signed by plaintiff showing the date of repossession as February 18, 1957, and bearing the notation “ — customer will redeem by 2/25/57.”
The difference between the witnesses for the respective parties particularly relates to the time allowed for redemption. Plaintiff contended and testified that no specific date was fixed, and that it was understood he could redeem his car at any time after he secured employment and was able to take up the payments on the notes. Both Braxton and Adams testified that the agreement was to allow plaintiff a period of one week within which he might make redemption.
Sometime on or about March 24, 1957, plaintiff called at the office of Southern Chevrolet, Inc., offered to take up the delinquent payments on his car and demanded *523 possession of the vehicle. Plaintiff was informed by Mr. Adams that the car had been sold.
Plaintiff testified that when he called at Southern Chevrolet on March 24th he had in his possession the sum of $100 which he had borrowed from his father, and which amount he intended to deliver as payment of installments on his notes. It is a matter of some interest, and perhaps of significance, that at the time of plaintiff’s visit to Southern Chevrolet, Inc. the car had been sold to one Robert Green, a foster brother of plaintiff.
Plaintiff’s action is based upon claim of the tortious conversion of his automobile by defendants, and, in support of this contention, it is urged, first, that plaintiff was “made” to execute the repossession agreement, and, second, that plaintiff’s transfer of title and ownership of his automobile to the defendant, GMAC, was subject to his right of redemption upon payment of delinquent installments upon his notes.
On the first proposition we are completely in accord with the finding of the district judge that the evidence does not support the conclusion that Green was “made” to execute the repossession agreement, in the sense of being forced or coerced thereto.
The second point is somewhat more difficult of resolution by reason of the conflict of testimony. We think it is clear that plaintiff did not sign the release and transfer of title to his automobile until after some nature of redemption agreement was reached. The contentions and the testimony of the parties are diametrically opposed, for plaintiff insists that he was given to understand the car would be held in storage until such time as he found employment and was able to make his payments, whereas the defendants claim that the redemption period was fixed at one week, failing compliance with which they were free to, and actually did, dispose of the automobile by sale to a third party. We regret we are in disagreement with the findings of the district judge on this point. In the first place, we perceive no reason why plaintiff’s testimony should be accepted at face value and accorded unreserved credence inasmuch as it is squarely controverted by the testimony of both Braxton and Adams. In further support of the version given by the witnesses for defendants there is a very practical and persuasive factor involved. Adams testified that the holding of a repossessed vehicle for an indefinite period of time was contrary to the custom of the company and that such an agreement was unprecedented. As a practical proposition we cannot conceive of a business enterprise entering into such a vague, indefinite and uncertain agreement. The extension of a reasonable period of grace is readily understandable, but an agreement entirely devoid of any time limitation appears to us to be completely beyond reason or sound business procedure. For these reasons it is our conclusion on this point that the redemption period was fixed as one week running from February 18th, the day of the signing of the release and transfer of title, to February 25th. It is not inappropriate to comment at this point that plaintiff’s action in borrowing one hundred dollars from his father and making demand for delivery of his automobile shortly after it had been sold to his foster brother gives substance to the idea that such action exceeded the bounds of coincidence and approached the realm of design.
Counsel for plaintiff urges that the repossession agreement was not read by plaintiff nor was it read to him. Conceding this point, we are, nonetheless, of the opinion that the purpose and intent thereof was completely explained by defendants’ employees and that plaintiff was fully cognizant of its contents.
From the facts above stated, the conclusion must necessarily follow that plaintiff voluntarily executed the release and transfer of title subject to the allowance by defendants of a period of one week within which he was permitted to enforce the right of redemption.
*524 It is observed that the district judge, upon the basis of the assumption that plaintiff intended to transfer the ownership of his car in satisfaction of his debt, denominated the transfer as conditional and classified it as either a conditional sale or a giving in payment — “which is reprobated by our law.”
We think our brother of the district court was manifestly in error in this classification. While it is true that conditional sales, as such, are reprobated by our law, and, indeed, are not accorded recognition by our courts as valid agreements, it is not true that a conditional obligation occupies the same status. On the contrary, conditional obligations are defined and classified under Article 2021 of our LSA-Civil Code. Similarly, transactions constituting a giving in payment are recognized under the provisions of Articles 2655 and 2656. If the transaction under examination in the instant case be denominated as a conditional obligation, dependent upon a reso-lutory condition, the condition has been fulfilled and discharged by the occurrence of the event provided, that is, the expiration of the time limit; LSA-C.C. 2038. If the transaction be classified as a giving in payment, it was complete, under its own terms, upon the expiration of the redemption period.
We are firm in the conclusion that plaintiff delivered title, possession and ownership of his automobile to the defendant, GMAC, in consideration of the satisfaction of his indebtedness, subject to his right of redemption within the period of one week. We are further convinced that the transfer of title, possession and ownership by plaintiff embraced the elements of consent and consideration necessary to the formation of a valid and binding contractual obligation between the parties.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and It Is Ordered, Adjudged And Decreed that plaintiff’s suit be dismissed at his cost.